Good morning, Your Honors. Ina Lipkin on behalf of the petitioner, Avtar Singh. This matter is before you after denial by the board. The petitioner was granted the relief of withholding of removal by the immigration judge, but appealed the denial of asylum, due mostly on the basis of the IJ's use of discretion to find that he had entered into a fraudulent marriage in 2006. So do you concede that the CAT claim is basically moot at this point? Yes, Your Honor. That's fine. So is it moot? Is CAT claim relief always coextensive with withholding of removal? No, it is a separate form of relief and has a different burden of relief. Then why is it that you're conceding that it's moot, given that the BIA did not address the matter? The respondent, the petitioner, agrees that withholding of removal allows him to indefinitely reside in the United States and not be removed to India. CAT relief would result in the same type of relief. We did argue in our brief his eligibility for CAT relief. Well, that's what frankly I'm struggling to really understand, because there's so certainly some cases that we have where the BIA and the IJ grant a withholding of removal and they did not reach the CAT relief claim, but really when it's presented to the circuit, that finding is not challenged, because the petitioner's gotten withholding of removal. In this instance, you've got a situation where he argued for both, but the BIA only addressed one, but yet you're conceding that it's moot. The government's theory, as I understand it, is that as a matter of law, these two remedies or these two forms of relief are coextensive, and I wonder whether that is always the case. Your Honor, I misspoke. I'm very sorry. It is true that as the petitioner argued in his case earlier, depends on a slightly different showing of eligibility, namely, unlike necessarily withholding, that the government, either of its own accord or through its acquiescence or inability to control third parties, would cause the petitioner to face torture. Normally, if an argument is raised before the BIA and the BIA is silent and fails to address it, normally we remand. That's right, Your Honor. In our opening brief, we did request the court to do that. So I am sorry, Your Honor, when I jumped to say that we agree it's a moot argument. Well, I don't see how you can say otherwise, actually. You should not let all your time be consumed by this kind of academic point. But I just have to say I think it is moot. Okay. So the reason I believe that you've called this case for oral argument is the issue of the burden of proof regarding the allegation of marriage fraud. The petitioner had argued in his brief there really was no evidence that really was sufficient to allow the IJ to determine by use of discretion that fraud had occurred. There was an affidavit by the ex-spouse saying she had been paid to marry the man. So I don't know what more direct evidence you could ask for. Your Honor, whenever such evidence is presented in immigration proceedings, the petitioner should have the opportunity to cross-examine the person who wrote the affidavit and determine its veracity. We don't know what circumstances led her to make the allegations that she did. So at the time that the evidence was presented to the IJ, it was circumstantial and not conclusive. And certainly it wouldn't meet that. That's direct evidence. I mean, I hear you that maybe tell me if you think somehow your client's due process rights were violated. But if you're presented with an affidavit under oath by somebody who was a direct participant in the transaction and says I got paid to marry someone, that's not circumstantial evidence. That's direct evidence of marriage fraud. Your Honor, the ex-wife never produced any proof that she was paid. The government had submitted some checks, but the writer of the check, the recipient of the check were not brought forth as witnesses to explain why they were paid by third parties for reasons unknown. It was just the ex-wife's allegation. And that was insufficient to form a negative accountability finding on that issue, whether fraud had occurred in the marriage or not. Especially given that the judge had found the petitioner credible in all other respects. Namely, credible in regards to the persecution he suffered in India and feared he would suffer again. What's your theory as to the ex-spouse's motivation to come into court and perjure herself, what, just to doom his  family? Your Honor, it could be any number of reasons. They could have had a lover's quarrel. I wouldn't want to speculate without having had her on the stand to explain her motivation. I don't know if you were the lawyer. I was not. Okay. So what's the issue about not having a chance to cross-examine the ex-spouse? To ask her why she would make those allegations. Let me be a little bit more precise. Are you claiming that there was some procedural irregularity in your client not having the ability to cross-examine her? What happened? Yes, and I believe that that was asserted even before the board, that the judge could not use that affidavit against the petitioner without having the government produce her. And the government did mention that she could be available in a month, but never did produce her. So that brings a doubt or casts a doubt as to whether she was maligning or not in her affidavit for reasons that we don't know. Do you want to save a little bit of time for rebuttal? Thank you. May it please the Court, Your Honors, Tim Randmith, United States Attorney General. In this immigration case, Petitioner Mr. Singh, a native of Indian, seeks a review of the decision of the Board of Immigration Appeals, which affirmed in the immigration judge's decision that he did not merit a favorable exercise of discretion for purposes of asylum, but granted him withholding of removal. Petitioner challenges this decision, but the board's decision was not manifestly in line with the board's decision. I'm going to need a little bit more convincing. Help me understand why it is that cat relief is always, as a matter of law, coextensive or fungible with withholding of removal. As I understand it, withholding of removal requires a protected ground, whereas cat relief requires torture, which is a matter of law. Now, if conditions change, and I'm not talking factually in this particular case, whether it will make a difference or not, I'm just talking generally as a matter of law, if the country conditions change, the government has the authority to move to reopen in order to terminate withholding of removal and or cat relief that was granted, correct? All right. So the way that the statute is set up, one form of relief may serve as a backstop to another, right? So somebody might have eligibility and be granted withholding of removal, because there's a protected ground, there's past persecution, and they may also be granted cat relief if the protected ground falls away, but that's not the case here. But the torture, the risk of torture is still there. The government may, in theory, or the government has the authority to basically reopen in order to take away withholding of removal, but yet the cat relief could still be there. That's why I think of it as conceptually different, the way it's set up under the statute. Where am I wrong in that analysis? You're right, they are conceptually different. And in that, let's take that for example. If DHS was to reopen the proceedings and move to terminate the grant of holding removal, at that point proceedings would have to be reopened to consider DHS's request, and Fishner could assert a claim for cat protection at that point. He could still seek that conceptually, but in this factual circumstance, the ultimate protection is the same for him. All right, so let me make sure I understand where you're coming from here. So what you're saying is that I'm correct in understanding that the two forms of relief are distinct from each other, but factually, because it makes no difference in this case, if the government were ever to reopen, let's say he got withholding of removal, he's also eligible for cat, but the government, the BIA essentially never reached his arguments regarding cat relief. The government then moves to reopen at that time. He has to come in, the opportunity to come in to qualify for cat relief, and that's not the case here. In order to assert cat relief. That's how you see the case playing out, correct? That's how it could play out if ever DHS moved to terminate based on changed country conditions in India. But at this point the board found no need to reach that issue because the ultimate protection was the same. He would not be removed to this country, India, because all claims concerned India. He would never be removed to that country as long as there was a clear probability of harm in that country. But the burden is the same. And he has that ultimate protection. So as the board, there's a case we cited, the board found that it is moot when you have been granted withholding of removal because substantially the same protection is granted, but conceptually they're different legally. Do you think that, theoretically speaking, that the petitioner's burden, or might have a more difficult time meeting his burden if he were to seek cat relief years later when the government moves to reopen? Evidence may be lost. So let's say someone has cat relief eligibility, but the BIA simply failed to reach that issue. And we have ample case law saying that the BIA is not free to just disregard arguments that's wrong. And here this particular petitioner raised the possibility of cat relief multiple times at every level, right? So theoretically speaking, someone could actually be eligible, but yet the BIA didn't address that issue. Now years later, evidence gets lost, memories fade, and wouldn't that petitioner conceivably have a harder time showing cat eligibility? Well, cat protection is always forward-looking. It's a clear probability of torture. That's what the burden is to establish that. It does consider various factors, and one would be any evidence of previous torture. In this case, there was a finding that he did establish past persecution. That's on the record. So there would never be any question whether or not those incidences which occurred in 1995 and 1997 where he alleged the Indian government persecuted him and it was found he did establish that claim, that's part of his case now. So he would not lose evidence that's part of the law of the case. So you'd have that instance of past mistreatment on the record, but you'd still always have to show the future burden that authorities would still acquiesce to his harm in the future in India. That would never change. That just goes on the basis of country conditions at the time. And so it would not really affect his substantive claim. You'd always have to show that. I understand. Thank you. That was interesting because there is actually in the record at the beginning of the June 22, 2006 hearing where the government DHS counsel requested a continuance to bring in Stacey Horne, the ex-wife, to give opposing counsel the opportunity to cross-examine her. And they stated they could procure her within the month because he had made arrangements. They stated what? They could procure her as a witness within a month. Sorry. But because they had made preliminary arrangements and I believe DHS counsel states in the record he made an oversight and that he failed to contact her immediately before the hearing and intended to bring her at the June 22, 2006 hearing. Are you talking about government counsel? Yeah, DHS counsel. But the petitioner opposed that continuance. He did not want the continuance in order to bring in his ex-wife. So it's hard to claim a due process violation to cross-examine her when he declined that instance. And also, you also mentioned motive earlier. That's another thing he never refuted or ever presented any explanation for why she would do that. When he was granted a two-week continuance in between the first hearing on June 2, 2006 where he was confronted with this initial evidence of the record of sworn statement, the copies of the checks, he asked for a continuance of two weeks to address the evidence. And he was granted that continuance. And when he came back, he had nothing. He had no affidavits showing his side of the story from people attesting that the marriage was bona fide. He had nothing claiming a motive why Stacey Horn, his ex-wife, would write this record of sworn statement or commit perjury on herself. He came in with nothing. And for these reasons, there remained a very significant negative equity on his record. And as this Court stated in the Hosseni case, when there is fraud in the dealings with the U.S. government, which is different than as there's much case law showing that when there's fraud leaving a country of persecution, that doesn't come into the discretionary calculus because that's not gratuitous fraud. But in this case, there is gratuitous fraud. He was in the country. He had been found to have passed persecution. And then while his remanded proceedings or while his appeal was pending with the board, he entered into this marriage in 2002. He was already safely in the country. It was purely gratuitous to obtain an immigration benefit. And for that reason, it remains a negative equity on his record that while reasonableness could differ or could weigh the negative equities differently versus the positive equities in this case, government submits that it's very reasonable that this was a significant negative equity that the board used to deny him asylum as a matter of discretion. Thank you. Thank you. Your Honors, I just want to close by saying that even though it is true that generally when an applicant enters into a marriage during removal proceedings, the government looks more closely at those marriages. However, in this case, the petitioner never swore under oath, rather, he was sworn in. Because it never had gotten to that point that there was an interview before Immigration and Naturalization Services, the legacy agency that's now USCIS. The application was withdrawn. And given that there was no oath taken by the petitioner and that the application was withdrawn, it was an abuse of discretion for the IJ and the board to speculate that it was a fraudulent marriage. So you don't refute in any way counsel's statement that your client did have an opportunity to cross-examine the ex-spouse and just declined it? Well, because the government did not timely bring the witness, they did not give the petitioner the opportunity to even prepare. There was no motion for the witness to come. There was no explanation or additional statement from her. So it would be unfair for them. Well, counsel, hold on, hold on. I mean, you were sitting right there two seconds ago. Counsel stated, I'm just asking you, do you refute this, that they come in with this new evidence. They say, hey, we're perfectly happy to grant your client a continuance because you might want to cross-examine her live and within a month we can have her here. Would you like that opportunity? And your client said, no, I don't want that opportunity. I want to go forward now. And I'm willing to take the risk that you're going to just decide the case based on this affidavit. Is that true or not true? That's all I'm asking. It's true. But in similar circumstances or anecdotally, many times an applicant will be in front of an immigration court and wants the opportunity to present a witness and the government on the same basis will decline saying you have had an opportunity to present this evidence and the judge will rule in favor of the government. It would be unjust to not allow a petitioner to also argue that the government failed to produce in a timely manner a witness and therefore that witness's testimony should not be or the government should not have the opportunity again to buy more time to get the same witness because as the record stood, without the witness's testimony, the judge did not have sufficient evidence to make an arbitrary negative discretionary finding. Thank you. All right. Thank you. The matter be submitted for decision.
judges: Noonan, Nguyen, Watford